IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

MALCOM MAXWELL RYIDU-X, a/k/a
RICHARD JANEY #273575
    Plaintiff,
v.                                      * CIVIL ACTION NO. WDQ-11-358

JOHN WOLFE, WARDEN,
INMATE COMMISSARY SUPERVISOR
  MICHAEL HARELL,[1]
SGT. MICHAEL FOY, INMATE PROPERTY
  SUPERVISOR, and
SGT. RENEE BYDUME- LIDELL, INMATE
  PROPERTY SUPERVISOR,
    Defendants.

MEMORANDUM

Pending are a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, as amended, filed by counsel for the Defendants (ECF Nos. 14 and 16), which shall be considered as a motion for summary judgment, and the Plaintiff's opposition thereto.[2] ECF No. 22. Ryidu-x, who is self-represented, seeks damages and alleges he has been denied mail order privileges and commissary items due to his use of his legally-recognized religious name.[3] For

---

[1] The Clerk shall amend the docket to reflect the full and proper spelling of the Defendants' names as reflected in the caption of this Memorandum.

[2] In reviewing the motion for summary judgment, Ryidu-x's evidence "is to be believed, and all justifiable inferences are to be drawn in [his] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[3] He also alleges improper denial of access to his prison records. The basis of this claim is less clear; it appears, however, that Ryidu-x sought information in his base file acknowledging his name change and granting him administrative relief at various institutions after he had been denied similar privileges due to his use of his name. Ryidu-x also implies that he needed certain records for use as exhibits in one or more court matters and/or to supplement administrative remedy procedure ("ARP") requests.

the following reasons, the dispositive motion will be denied and the parties provided an opportunity for further response.[4]

Background

On February 23, 1998, Richard Edward Janey was sentenced in the Circuit Court for Anne Arundel County to 25 years' incarceration for second-degree murder and arson in Criminal No. 02K950000498.[5] On August 17, 1998, Janey petitioned the Circuit Court for Baltimore City to change his name to "Malcom Maxwell Ryidu-x."[6] The name change was granted on October 28, 1999.[7] See Civil Case No. 24D98229021.

In the ensuing years, Malcom Ryidu-x has filed numerous state court cases against the Department of Public Safety & Correctional Services ("DPSCS"). In those cases, Ryidu-x, #273575 is listed as Plaintiff,[8] with the name "Richard Janey" listed as an alias. Likewise, this Court lists Ryidu-x as the proper party plaintiff, with "Richard Edward Janey" listed as an alias, in the many cases Ryidu-x has filed here.[9]

Against this backdrop, Malcom Maxwell Ryidu-x, a/k/a Richard Janey, filed a civil rights complaint under 42 U.S.C. § 1983 against Warden John Wolfe[10] and three supervisory

---

[4] Plaintiff's Motion for Appointment of Counsel (ECF No. 24) shall be denied without prejudice, subject to renewal after Court review of the supplemental filings.

[5] See http://casesearch.courts.state.md.us/inquiry/inquirySearch.jis.

[6] The Court assumes the name change occurred as a result of Plaintiff's conversion to Islam.

[7] Janey had previously petitioned the Anne Arundel County Circuit Court seeking a name change. Although the electronic docket is unclear, it appears that court may also have granted the name change on April 9, 1998. See Civil No. 02C98044720.

[8] Both state and federal court dockets at times list Ryidu-x's first name as "Malcolm." He spells his first name "Malcom" and this spelling is recognized by the decree of name change granted in Baltimore City Circuit Court.

[9] One exception is apparent: Plaintiff used "Richard Edward Janey" in his unsuccessful bid for federal habeas corpus relief filed in this court. See *Janey v. Sondervan, et al.*, Civil Action No. H-02-2110 (D. Md.).

[10] Counsel's representation to the contrary, Wolfe remains listed as Warden on the Maryland DPSCS website. http://www.dpscs.state.md.us/locations/jci.shtml

corrections officers responsible for commissary and property supplies at Jessup Correctional Institution ("JCI"), the maximum security prison where Ryidu-x has been housed on administrative and/or disciplinary segregation status since his March 11, 2010 transfer from Western Correctional Institution ("WCI"). ECF No. 1 at 1 and ECF No. 22 at 2.

Ryidu-x attaches several exhibits to his Complaint. With regard to his request for copies of his records, he provides Exhibit A-1, a DPSCS Application and Consent Form for Release of Inmate Case Record Information dated December 29, 2010. The form contains both Plaintiff's birth name (Richard Janey) and legal name (Malcom Ryidu-x) and his Division of Correction ("DOC") number, but is signed "Malcom Ryidu." The form requests a "memo from Headquarters case manager supervisor Ms. Cynthia Holly (Dated May-June 2010)" and "record & administrative reviews from 3/10 through 1/11" for "court-legal matters." Exhibits A-2 and A-3 consist of an unsigned response from the Warden's office to "Richard Janey #273-575 BD 809", dated January 6, 2011, stating "Richard Janey #273-575, release of information form is being returned. Name is _invalid_. Must use and sign using name under which you were committed." (Emphasis in original).

Ryidu-x next provides a JCI Catalog Request Sheet[11] on which he wrote both his birth name and legal name and his DOC number. At the top of the form, he asks DOC personnel to "[p]lease note that my legal name change has been recorded by the Md. DOC as of 1998 – all dept[s]. should be aware of my right to access under: Malcom Maxwell Ryidu-x. See _page 2 in computer please_." (Emphasis in original). It appears Ryidu-x provided a $23.50 money order to purchase one or more items from Union Supply Company, Inc. Defendants provide a dated copy of this Request Sheet, indicating that Defendant Foy approved some items on October 7, 2010,

---

[11] Prisoners may request certain property otherwise unavailable through the prison commissary from outside vendors twice a year. ECF No. 22 at 4, Exhibit 2 at 1-3.

but disapproved other items that were available through the prison commissary. ECF No. 14, Exhibit 6. Defendants also demonstrate Ryidu-x signed for one package from "Music by Mail" on that date. *Id.*, Exhibit 7. Ryidu-x alleges that while he did receive one or more individual packages from outside vendors, his ability to obtain bulk "mail order packages" for approved goods not provided through the commissary was thwarted (with packages either returned to the vendors or stolen by staff) due to his use of his legal name. ECF No. 22 at 3-4.

Ryidu-x also provides a notation on an Inmate Response Form from an Administrative Remedy Procedure ("ARP") Coordinator, dated March 1, 2010, indicating that "a copy of the WCI Meritorious ARP was forwarded to the Commissary Department and the JCI Finance Department." *Id.*, Exhibit C-1. The "WCI Meritorious ARP", attached as Exhibit C-2, references a June 26, 2009 response granting an ARP request and requiring WCI[12] commissary personnel to recognize his legal name change and allow him commissary privileges under that name. He then provides a June 11, 2010 ARP request to JCI personnel complaining that he has been denied access to similar commissary services "due to the use of my legal (and religious) name: Malcom Maxwell Ryidu-x." In an attachment, he notes that "previous Wardens' responses to ARP complaints (see WCI-0598-09) ordered me to use only Malcom M. Ryidu-x in commissary affairs; JCI's commissary officials admit to 'throwing out' my requests. See report dates: 5/23/10, and 6/6/10." Included with the exhibit are several JCI Commissary Order Forms showing he was denied commissary on several occasions, even though he provided both names on his request forms. No explanation for the denial is apparent on the forms. ECF No. 1, Exhibit C-3.

---

[12] Like JCI, WCI is a maximum security prison.

Defendants' Affirmative Defense

Defendants argue that Ryidu-x has failed to exhaust administrative remedies. The Prison Litigation Reform Act ["PLRA"] generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to the allegations raised here.

"[A]n inmate's failure to exhaust his administrative remedies must be viewed as an affirmative defense that should be pleaded or otherwise properly raised by the defendant." *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F. 3d 674, 681 (4th Cir. 2005). Defendants in the instant case have properly raised the exhaustion issue and Ryidu-x has responded accordingly. Defendants contend that Ryidu-x has not exhausted administrative remedies with respect to the issues raised in this complaint. ECF No. 14 at 6-7. Specifically, Defendants claim that he failed to comply with the directions of both the JCI and DOC ARP coordinators and failed to appeal the denial of relief to the Inmate Grievance Office ("IGO"). Ryidu-x provides evidence that he attempted to comply with the directive that he show proof of a legal name change, but the records had been archived and were not available in the City Circuit Court. ECF No. 22 at 31. He implies that the records were also part of the information he later attempted to obtain from his prison base file. ECF No. 22 at 6 and ECF No. 1, Exhibit A-1.

The affirmative defense raised here only applies if administrative remedies are actually available to the prisoner. This Court is "obligated to ensure that any defects in administrative

5

exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). Under *Aquilar-Avellaveda*, an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *Id.*, 478 F.3d at 1225; *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

The facts regarding Plaintiff's efforts to exhaust his administrative remedies are in dispute. Given the information before it, the Court cannot say that Ryidu-x failed to exhaust his "available" remedies because he could not obtain the documentation required (proof of his legal name change) within the period of time required for perfecting his administrative appeals. The Complaint shall be addressed on its merits.

The Defendants also contend that upon transfer to JCI in March, 2010, Ryidu-x was permitted to retain personal property allowed to segregation status prisoners, and several items not permitted under DOC regulations were confiscated. ECF No. 14, Exhibits 3 and 4. Ryidu-x, however, has no issue with regard to this confiscation nor with the limited amount of allowable personal property permitted under the regulation.[13] ECF No. 22 at 1-3.

---

[13] The Court has examined the regulation, Division of Correction Directive ("DCD") 220-001 et seq., attached as Exhibit 2 to ECF No. 14. The DCD appears responsive to Defendants' argument that any denial of commissary had

Standard of Review

Under Fed. R. Civ. P. 56(a), "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [its] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court also "must abide by the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

Analysis

1. First Amendment Claim

The Free Exercise Clause of the First Amendment is applicable to the states by virtue of the Fourteenth Amendment. *See Employment Division v. Smith*, 494 U.S. 872, 876-77 (1990). It provides that "Congress shall make no law ... prohibiting the free exercise" of religion. U.S. Const. Amend. I. A prisoner, however, does not enjoy the full range of freedoms as those not incarcerated; rather, state action violates a prisoner's constitutional rights if it burdens a religious right and is not reasonably related to a legitimate penological interest. *See Turner v. Safley*, 482

---

nothing to do with Plaintiff's name due to his security status. Ryidu-x does not contest that he could not possess certain items of property due to his security status. The issue presented in this case extends beyond such claim.

7

U.S. 78, 89 (1987); *accord O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) ("Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."), *O'Lone*, 482 U.S. at 348. Prisoners retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment. *See Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972). That right is not unfettered; prison restrictions that impact on the free exercise of religion but are related to legitimate penological objectives do not run afoul of the constitution. *See Turner*, 482 U.S. at 89-91.

The test to determine if the restrictions are justified requires examination of whether there is a rational relation between the asserted governmental interest and the regulation in question. In addition, this Court must examine whether there are alternative means of exercising the right asserted, whether accommodation of the right will impact on the orderly operations of the prison, and whether readily available alternatives to the regulation would be less restrictive.[14] *See id.*

Neither the practice of prisoner conversion to Islam after incarceration (with a subsequent adoption of a religious name) nor litigation concerning the degree of recognition such change requires in the prison setting are unusual. Defendants, however, do not provide information concerning the DOC's policies and regulations regarding prisoners' use of legally recognized religious names, including whether use of such names mandates the withholding of commissary,

---

[14] An additional consideration in this case is the standard provided by the Religious Land Use and Institutionalized Persons Act (RLUIPA), which provides in part that:
> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a).

mailing privileges or other services available to prisoners. They also do not provide detailed analysis of federal court precedent governing the alleged misconduct under discussion here.

Ryidu-x cites *Hakim v. Hicks*, 223 F.3d 1244 (11th Cir. 2000) and *Ali v. Dixon*, 912 F.2d 86 (4th Cir. 1990) in support of his position that prisoners have a First Amendment right to obtain prison services using a legally recognized religious name. *Hakim* challenged a Florida prison policy of issuing identification cards *only* in a prisoner's commitment name, then precluding use of all forms of related services under the dual-name policy because "to access internal services" such as the prisoner accounting system and commissary, a prisoner "must use an identification card." *Id.*, 223 F.3d at 1247. The district court ultimately granted summary judgment in favor of Hakim "with respect to the claim concerning the identification card. The claim concerning internal services is absorbed by the identification card claim since the internal services are operated and received through possession of an identification card." By the time the case entered the summary judgment phase, prison policy had evolved to allow a "dual system" of identification for receipt and posting of mail. *Id.*

Ninth Circuit precedent on the issue of legal name changes by prisoners is equally broad and has consistently supported three propositions. First, a prisoner has a First Amendment interest in using his religious name, at least in conjunction with his committed name. Second, a prisoner cannot compel a prison to reorganize its filing system to reflect the new name.[15] Third, in states where prisoners are allowed to change names legally, prisons are generally required to recognize only legally changed names. *See Malik v. Brown*, 71 F.3d 724, 727 (9th Cir. 1995) (citations omitted).

---

[15] The Ninth Circuit cited Fourth Circuit precedent for this proposition. *See Malik v. Brown*, 71 F.3d 724, 727 (9th Cir. 1995), citing *Barrett*, 689 F.2d at 503.

While this Court is not persuaded that adoption of either the Eleventh or Ninth Circuit standard is required for Maryland, it is open to the argument JCI prison personnel are denying Ryidu-x commissary, purchasing, mail privileges, and access to records available to other prisoners with the same security classification based on his legally recognized name change and/or adoption of an Islamic name.[16] Defendants have provided no regulations, written policies, or legal analysis to defend against Ryidu-x's claims concerning denial of such privileges and thus are not entitled to summary judgment on this record.

2. Due Process Claim

Defendants argue that a prisoner has no constitutional right to access his prison files, citing *Paine v. Baker*, 595 F.2d 197, 200 (4th Cir. 1979). While generally true, a prisoner seeking to establish erroneous information contained in his prison file which is relied on to a constitutionally significant degree may have a liberty interest and/or due process right to know what is contained therein. *Id.*, 595 F.2d at 201-202.

The Court is unclear as to the type of information Ryidu-x sought to obtain from his prison files and the purpose for which the information was sought. To the extent the information pertained to his legal name change – information he was required to provide in order to supplement his administrative remedy procedure request and appeal in a matter pertaining to his religious name change – a liberty interest may be implicated. The Court shall require counsel to provide information pertaining to Ryidu-x's request for information from his files as well as any written regulations or policies governing prisoner access to files and any relevant case law governing this claim.

---

[16] The Court recognizes that in addition to a free exercise claim, the allegations may also be construed as raising an equal protection claim.

3. Qualified Immunity

Defendants assert that they are entitled to summary judgment on the basis of qualified immunity as to all claims, as they have not violated any clearly established constitutional right of which a reasonable public official should have known. This assertion fails.

Defendants rely on *Barrett v. Virginia*, 689 F.2d 498 (4th Cir. 1982) for the proposition that there is no constitutional impropriety in maintaining records using both Plaintiff's name under which he was committed and his religious name. That argument is correct as far as it goes. *Barrett*, however, also held that because the First Amendment protects a prisoner's right to legal recognition of an adopted religious name, "correctional authorities may not properly condition the receipt of services or benefits upon his waiving such right. For example, it would be unlawful for Virginia to refuse to deliver mail addressed to a prisoner under his legal religious name." *Barrett*, 689 F.2d at 503 (additional citations omitted); *Ali*, 912 F.2d at 90.[17]

Consideration of summary judgment based on information currently available to this Court is denied without prejudice, subject to renewal after the parties file supplemental memoranda to provide the information requested herein. Ryidu-x's request for appointment of counsel shall be denied without prejudice subject to renewal at the time of supplemental submission.

10/25/11
Date

William D. Quarles, Jr.
United States District Judge

---

[17] The case referenced by Ryidu-x, *Hakim*, is informative on the issue of qualified immunity, as it cites *Malik*, 71 F.3d at 730 (denying qualified immunity because requirement that prison comply with dual-name policy for mail was clearly established under Ninth Circuit standard) and *Salaam v. Lockhart*, 905 F.2d 1168, 1174 (8th Cir.1990) (holding that prison acted unreasonably in refusing to add religious name a/k/a designation to files).