IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MALCOM MAXWELL RYIDU-X, a/k/a
RICHARD JANEY #273575                    *
        Plaintiff,

        v.                               *   CIVIL ACTION NO. WDQ-11-0358

JOHN WOLFE, WARDEN,                      *
INMATE COMMISSARY SUPERVISOR
   MICHAEL HARELL,                       *
SGT. MICHAEL FOY, INMATE PROPERTY
   SUPERVISOR, and                       *
SGT. RENEE BYDUME- LIDELL, INMATE
   PROPERTY SUPERVISOR,                  *
        Defendants

MEMORANDUM

For the following reasons Defendants' Motion for Summary Judgment, as supplemented,

will be granted.[1]  ECF Nos. 14, 16 and 31.  The Court determined that no hearing was necessary.

*See* Local Rule 105.6 (D. Md. 2011).

I.    Background[2]

Ryidu-x, who is self-represented, seeks damages and alleges he has been denied mail

order privileges and commissary items, as well as access to his prison records, due to his use of

his legally-recognized religious name.[3]

---

[1] Plaintiff Ryidu-x has filed opposition responses which have been fully considered. ECF Nos. 22, 32 and 34.  His second request for appointment of counsel, ECF No. 33, will be denied for reasons set forth in this Court's Memorandum of October 25, 2011, ECF No. 25.

[2] In reviewing the motion for summary judgment, Ryidu-x's evidence "is to be believed, and all justifiable inferences are to be drawn in [his] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[3] In his final opposition response, Ryidu-x complains that he was denied access to the prison library on December 1 and December 15, 2011, due to use of his religious name. ECF No. 32 at 4 and Exhibit 3. Ryidu-x has initiated an Administrative Remedy Procedure ("ARP") grievance regarding these incidents. *Id.* The grievance process likely is not completed at this time and this case is ripe for disposition; accordingly, Ryidu-x will not be permitted to amend his complaint to add this claim. He is, however, free to file a new civil rights action in this Court after completion of the ARP process.

The facts of this case, set forth in greater detail in the October 25, 2011 Memorandum, follow. On February 23, 1998, Richard Edward Janey was sentenced to twenty-five years incarceration in the Circuit Court for Anne Arundel County in Criminal No. 02K950000498.[4] On August 17, 1998, Janey petitioned the Circuit Court for Baltimore City to change his name to "Malcom Maxwell Ryidu-x." The name change was granted on October 28, 1999.[5] *See* Civil Case No. 24D98229021.

In the ensuing years, Ryidu-x has filed numerous state court cases against the Department of Public Safety & Correctional Services ("DPSCS"). In those cases, Ryidu-x, #273575 is listed as Plaintiff,[6] with the name "Richard Janey" listed as an alias. Likewise, this Court lists Ryidu-x as the proper party plaintiff, with "Richard Edward Janey" listed as an alias, in the many cases Ryidu-x has filed here.[7]

Ryidu-x filed the instant civil rights complaint under 42 U.S.C. § 1983 against Warden John Wolfe and three supervisory corrections officers responsible for commissary and property supplies at Jessup Correctional Institution ("JCI"), the maximum security prison where Ryidu-x has been housed on administrative and/or disciplinary segregation status since his March 11, 2010 transfer from Western Correctional Institution ("WCI"). ECF No. 1 at 1; ECF No. 22 at 2.

---

[4] *See* http://casesearch.courts.state.md.us/inquiry/inquirySearch.jis.

[5] Janey had previously petitioned the Anne Arundel County Circuit Court seeking a name change. Although the electronic docket is unclear, it appears that court may also have granted the name change on April 9, 1998. *See* Civil No. 02C98044720.

[6] Both state and federal court dockets at times list Ryidu-x's first name as "Malcolm." He spells his first name "Malcom" and this spelling is recognized by the decree of name change granted in Baltimore City Circuit Court.

[7] One exception is apparent: Plaintiff used "Richard Edward Janey" in his unsuccessful bid for federal habeas corpus relief filed in this Court. *See Janey v. Sondervan, et al.*, Civil Action No. H-02-2110 (D. Md.).

Having previously held that the named Defendants are not entitled to qualified immunity,[8] the Court now examines the merits of Ryidu-x's First Amendment and due process claims.

II.    Analysis

    A.    Standard of Review

Under Fed. R. Civ. P. 56(a), "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [its] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court also "must abide by the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

---

[8] *See* Memorandum at 11, ECF No. 25. In asserting entitlement to qualified immunity as to all claims, Defendants relied on *Barrett v. Virginia*, 689 F.2d 498 (4th Cir. 1982) for the proposition that there is no constitutional impropriety in maintaining records using both Plaintiff's name under which he was committed and his religious name.  While noting that such argument is correct as far as it goes, the Court further noted that *Barrett* also held that because the First Amendment protects a prisoner's right to legal recognition of an adopted religious name, "correctional authorities may not properly condition the receipt of services or benefits upon his waiving such right. For example, it would be unlawful for Virginia to refuse to deliver mail addressed to a prisoner under his legal religious name."  *Barrett*, 689 F.2d at 503 (additional citations omitted); *Ali v. Dixon, 912 F. 2d 86, 90* (4th Cir. 1990).  The Court also noted that the case referenced by Ryidu-x, *Hakim v. Hicks*, 223 F.3d 1244 (11th Cir. 2000), is informative on the issue of qualified immunity, as it cites *Malik v. Brown*, 71 F.3d 724, 730 (9th Cir. 1995) (denying qualified immunity because requirement that prison comply with dual-name policy for mail was clearly established under Ninth Circuit standard), and *Salaam v. Lockhart,* 905 F.2d 1168, 1174 (8th Cir.1990) (holding that prison acted unreasonably in refusing to add religious name a.k.a designation to files).

B.      First Amendment Claim

The Free Exercise Clause of the First Amendment, applicable to the states by virtue of the Fourteenth Amendment,[9] provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. Const. Amend. I. A prisoner, however, does not enjoy the full range of constitutional freedoms; rather, state action violates a prisoner's constitutional rights if it burdens a right and is not reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-49 (1987) ("Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."). Prisoners retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment. *See Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972). However, that right is not unfettered: prison restrictions that impact on the free exercise of religion but are related to legitimate penological objectives do not run afoul of the constitution. *See Turner*, 482 U.S. at 89-91.

If there is a rational relation between the asserted governmental interest and the regulation in question, this Court must examine whether there are alternative means of exercising the right asserted, accommodation of the right will impact on the orderly operations of the prison, and readily available alternatives to the regulation would be less restrictive. *See id.*

Ryidu-x cites *Hakim v. Hicks*, 223 F.3d 1244 (11th Cir. 2000), and *Ali v. Dixon*, 912 F.2d 86 (4th Cir. 1990), in support of his position that prisoners have a First Amendment right to obtain prison services using a legally recognized religious name. ECF No. 22 at 7, 8.

---

[9] *See Employment Division v. Smith*, 494 U.S. 872, 876-77 (1990).

Defendants do not quarrel with that position. Indeed, they provide copies of a Division of Correction ("DOC") case management publication and the DOC's Request for Inmate Name Change paperwork that read together, demonstrate that the DOC permits a prisoner to change his name even if the prisoner does not obtain a court order recognizing the name change.[10]  ECF No. 31, Exhibit 1 at 1-2.  Thus, DOC written policy does not violate Ryidu-x's First Amendment interest in using his religious name to obtain an ID card and conduct personal business, including sending and receiving funds, posting and receiving mail, and purchasing commissary items. *See Ali*, 912 F.2d at 90.  The policy does require that the name listed on a prisoner's court commitment is the primary name for identification through the OBSCIS database.  This requirement is reasonably related to security because it pertains to identity, and does not violate the First Amendment. *See Malik v. Brown,* 71 F.3d 724, 727 (9th Cir. 1995) (a prisoner cannot compel a prison to reorganize its filing system to reflect the new name).[11]

Ryidu-x has suffered no constitutional impediment as a result of  policies and directives that govern prison recognition of his adoption of a religious name.  Whether non-supervisor JCI prison personnel are aware of these policies yet regularly ignore them, improperly denying Ryidu-x commissary, purchasing and mail privileges available to other prisoners with the same security classification, based solely on Ryidu-x's adoption of an Islamic name, remains

---

[10] It appears likely that the 1999 court order acknowledging Ryidu-x name change may have been a part of his prison file, as evidenced by his successful ARP grievance concerning his proper name filed during the time he was incarcerated at Western Correctional Institution ("WCI"). *See* ECF No. 1, Exhibit C-1.  The "WCI Meritorious ARP", ECF No. 1, Exhibit C-2, references a June 26, 2009 response granting an ARP request and requiring WCI commissary personnel to recognize Ryidu-x's legal name change and allow him commissary privileges under that name.

Ryidu-x has contacted the Baltimore City Circuit Court to obtain another copy of his name change decree. ECF No. 32, Exhibit 2. While the Court cannot dictate that a copy of the decree be made a part of Ryidu-x's prison file, it is apparent that such a step could help clarify his name should he be transferred in the future to another DOC facility.

[11] The Ninth Circuit cites Fourth Circuit precedent for this proposition. *See Malik v. Brown*, 71 F.3d 724, 727 (9th Cir. 1995) (*citing Barrettt v. Virginia*, 689 F.2d 498, 503 (4th Cir. 1982)).

   — 

unclear.[12]  As outlined in the October 25, 2011 Memorandum, Ryidu-x's use of his Islamic name

may have resulted in denial of commissary privileges and the return of purchases from approved

outside vendors on several occasions.  ECF No. 25 at 3-4.  At other times, packages clearly were

received, as evidenced by Ryidu-x's signature.  *See* ECF No. 14, Exhibits 6 and 7.  Sometimes,

Ryidu-x was denied commissary even though he provided both names on his request forms.  No

explanation for the denial is apparent on the forms.  ECF No. 1, Exhibit C-3.  The commissary

and mail room personnel's denial, under those circumstances, borders on impermissible

performance.  *See Ali*, 912 F.2d at 90.  On this record, however, there are insufficient facts to

squarely find a violation of constitutional magnitude by the named Defendants, and Ryidu-x can

point to no actual injury resulting from misconduct committed by commissary and mailroom

personnel.  Accordingly, summary judgment will be granted for the Defendants.[13]

      C.     Due Process Claim

      The Defendants argue that a prisoner has no constitutional right to access his prison files,

citing *Paine v. Baker*, 595 F.2d 197, 200 (4th Cir. 1979).  Though that is generally true, a

prisoner seeking to establish that there is erroneous information in his prison file which is relied

on to a constitutionally significant degree may have a liberty interest and/or due process right to

know what is contained therein.  *Id*. at 201-202.

      Defendants now provide a copy of Division of Correction Directive ("DCD") 20-12,

"Access to Inmate Case Records."  ECF No. 31, Exhibit 5.  The DCD is detailed, and clearly sets

---

[12] In addition to a free exercise claim, the allegations may also be construed as raising an equal protection claim. *See Morrison v. Garraghty*, 239 F.3d 648, 656 (4th Cir. 2001).  To establish an equal protection claim, Ryidu-X must show that (1) "he is being intentionally or purposefully discriminated against on the basis of his" religion, and (2) the discrimination is not "justified by legitimate penological interests." *Id.* at 657.  As discussed above, the sole potentially unlawful actions are not attributable to the named Defendants, and Ryidu-x has identified no actual injury caused by the misconduct.  Summary judgment is appropriate if the allegations are construed as raising an equal protection claim.

[13] To the extent that Ryidu-x paid for packages that were never received and never received refunds for his purchases, he may avail himself of the State's small claims court to recover his losses.

6

out a mechanism by which a prisoner may obtain certain information from his case records. Access is limited, as is the number of times a prisoner may request access in a given period of time. According to Exhibit A-1 attached to the Complaint, Ryidu-x filed a Department of Public Safety and Correctional Services ("DPSCS") Application and Consent Form for Release of Inmate Case Record Information, dated December 29, 2010, using his birth name (Richard Janey), legal name (Malcom Ryidu-x), and Division of Correction ("DOC") number.  The application, signed "Malcom Ryidu," requested a "memo from Headquarters case manager supervisor Ms. Cynthia Holly (Dated May-June 2010)" and "record & administrative reviews from 3/10 through 1/11" for "court-legal matters."  ECF No. 1, Exhibit A-1.  The Warden's office returned an unsigned response to "Richard Janey #273-575 BD 809," dated January 6, 2011, stating "Richard Janey #273-575, release of information form is being returned.  Name is invalid.  Must use and sign using name under which you were committed."  *Id.* Exhibit A-2.

Nothing in the DCD supports the unidentified staff person's decision to reject the application.  Ryidu-x now possesses a copy of the DCD outlining the procedures for obtaining access to his records, and the Defendants are on notice that prison staff tasked with processing record requests may be improperly applying the DCD when a prisoner provides his commitment name, his properly changed name, and his DOC number on the form, but signs the application using only his recognized changed name.[14]  As Ryidu-x has failed to establish that he suffered actual harm as a result of his inability to review any of the records requested, his claim for damages is hereby denied and summary judgment will be granted for the defendants.

---

[14] It is not clear what type of additional information Ryidu-x sought to obtain from his prison files and the purpose for which the information was sought.  Ryidu-x provides evidence that he sought to obtain the Warden's response to an adjustment proceeding dated January 3, 2011.  ECF No. 32 at 11.  He also states generally that he submitted several requests to review medical records created between October 2010 and October 2011.  *Id.* at 10.  Although Ryidu-x claims his inability to obtain access to the records is based on "the intentional and constant religious discrimination suffered…at Jessup Correctional Institution." (ECF No. 32 at 1), it appears that prison personnel simply never responded to those requests.

III.    Conclusion

For the reasons stated above, the Defendants' motion for summary judgment will be granted.

_____    _____
Date                              William D. Quarles, Jr.
                                  United States District Judge

8